UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

- - -

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | . | Case No. 1:09-cr-149 |
| | . | |
| Plaintiff, | . | ***Continued Hearing (Day 2)*** |
| | . | ***Arraignment and Plea*** |
| - v - | . | |
| | . | Tuesday, November 10, 2009 |
| ARTIC GLACIER INTERNATIONAL | . | 10:00 AM |
| INC., | . | |
| | . | |
| Defendant. | . | Cincinnati, Ohio |

. . . . . . . . . . . . . . . .


TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE HERMAN J. WEBER, SENIOR JUDGE

For the Plaintiff:      KEVIN C. CULUM, ESQ.
                        DONALD M. LYON, ESQ.
                        United States Department of Justice
                        Antitrust Division
                        Carl B. Stokes U.S. Court House
                        801 West Superior Avenue, 14th Floor
                        Cleveland, Ohio  44113-1857

For the Defendant:      JOHN M. MAJORAS, ESQ.
                        Jones Day
                        325 John H. McConnell Boulevard
                        Suite 600
                        Columbus, Ohio  43215-2673

For the Petitioners:    DAVID F. AXELROD, ESQ.
                        Axelrod LLC
                        250 Civic Center Drive, Suite 500
                        Columbus, Ohio  43215

Also present:           Hugh A. Adams, Secretary, Arctic
                        Glacier Inc.
                        Laura S. Jensen, Probation Officer

Law Clerk:              Amy Peters Thomas, Esq.

Courtroom Deputy:       Darlene Maury

Court Reporter:         Luke T. Lavin, RDR, CRR

*Proceedings recorded in stenotype;*
*transcript prepared by computer.*

1                    P R O C E E D I N G S

2        (In open court at 10:00 AM.)

3             THE COURT:  Proceed, Ms. Maury.

4             COURTROOM DEPUTY:  Judge, on the docket this morning

5    is Criminal Action 09-149, United States of America versus

6    Arctic Glacier International.  Appearing on behalf of the

7    government is Kevin Culum and Don Lyons.  Appearing on behalf

8    of the defense is John Majoras, and David Axelrod is appearing

9    for the victims group.

10            THE COURT:  Mr. Axelrod, you're welcome to use the

11   smaller table over here.

12            MR. AXELROD:  Thank you very much, Your Honor.  I

13   will.

14            THE COURT:  If I'd have known you were coming, I might

15   have baked a cake.

16            MR. AXELROD:  And I would have been grateful for it,

17   Your Honor.

18            THE COURT:  Well, gentlemen, ladies, you actually see

19   I really am a federal judge, and this is the first time this

20   courtroom has been used since May of 2008.  So it is a

21   momentous occasion, from my point of view, and I hope you find

22   the environment comfortable.

23     I realize that this is a hearing of a matter that began on

24   October the 27th of this year and which I recessed, so this is

25   simply a continuation of that proceedings; however, since this

1    was a momentous occasion from the point of view of this room, I

2    asked the courtroom deputy to open court formally.  I don't

3    mean to in any way undo what we did at our last meeting.

4        At our last meeting I accepted the waiver of the

5    indictment, and I specifically held that, on page 57 of the

6    transcript, "The Court will accept the waiver and order the

7    Information filed."  And then I began, "It has become the

8    charging document in this case and, due to commitments that the

9    Judge has at this time other than this case, the matter will be

10   recessed until November" -- I said the 12th, but I actually

11   misspoke.  It's the 10th -- "at 10:00 o'clock," which is the

12   time that we're meeting now.

13       The first issue that I wish to discuss, of course, is the

14   fact that on that date we filed, and I accepted, the Atlantic

15   Glacier International Inc. written consent of directors, and it

16   became docket number 19 in our case file.

17       At this time, Mr. Adams, has there been any change in the

18   desire of the board of directors in this matter?

19            MR. ADAMS:  Your Honor, the document is accurate and

20   current.

21            THE COURT:  Thank you.

22       The Court then will proceed with the arraignment at this

23   time.  Mr. Adams, how does the corporation plead?

24            MR. ADAMS:  The plea is guilty, Your Honor.

25            THE COURT:  All right.  Please be seated.  This is a

1  long proceeding.  It's important that you and I understand, Mr.

2  Adams, what's going on here.

3          MR. ADAMS:  Thank you, Your Honor.

4          THE COURT:  And if there's any questions at all in

5  your mind as we go through this proceedings, please ask them.

6  Ask them directly of me, and if you're concerned about asking a

7  question directly of me, why, ask Mr. Majoras and he'll be more

8  than happy to present the question to me.  But this is for my

9  benefit and your benefit, and that's why we're concerned.  I

10  know the lawyers are important, but this my responsibility.

11      Before I can accept your plea of guilty, I must determine

12  that it is made voluntarily, with an understanding of the

13  nature of the charge and the consequences of the plea.  By

14  offering to plead guilty, the corporation gives up certain of

15  the constitutional rights, and this must be an intentional

16  giving up of rights and privileges that they now have.  Please

17  understand that I need not accept your plea of guilty unless

18  satisfied of your guilt and that you fully and the corporation

19  fully understands its rights.

20      In order to make this determination, I must ask certain

21  questions.  Before I do, it's necessary that you obligate

22  yourself to tell the truth.  Once having been sworn, your

23  answers to my questions will be subject to the penalties of

24  perjury, of making a false statement, possibly obstruction of

25  justice, possibly contempt of court.

1    Are you willing to accept the obligation to tell the truth?

2        MR. ADAMS:  I am, Your Honor.

3        THE COURT:  My first question then is:  Have all the

4  answers you've given me on October the 27th and the discussions

5  that we had --

6        COURTROOM DEPUTY:  Judge.

7        THE COURT:  -- have they all been the truth?

8        MR. ADAMS:  Yes, sir, they are all truthful.

9        COURTROOM DEPUTY:  Judge, would you like me to swear

10  him in?

11        THE COURT:  I guess maybe I should.

12     I guess I should swear you.  Since you're a lawyer, you're

13  already sworn, so I didn't -- I jumped the gun.

14     Go ahead, Ms. Maury.

15        COURTROOM DEPUTY:  Please stand and raise your right

16  hand.

17     (Hugh A. Adams was duly sworn by the courtroom deputy.)

18        COURTROOM DEPUTY:  Thank you.  Be seated.

19        THE COURT:  Now I repeat my questions.

20     Have all the answers you've given over the course of our

21  relationship been the truth?

22        MR. ADAMS:  Yes, they are the truth.

23        THE COURT:  I know that you are a practicing lawyer.

24  Is that correct?

25        MR. ADAMS:  That's correct.

```
 1          THE COURT:  And so your education, if you'll just
 2   briefly lay it out for me, I'd appreciate it.
 3          MR. ADAMS:  I took my law school in Canada, precisely,
 4   in Winnnipeg, Manitoba.  I was called to the Bar in 1978 and
 5   since that time have conducted a practice that commenced doing
 6   primarily civil litigation, has now changed and I now do
 7   predominantly corporate securities and refinancing work.
 8          THE COURT:  And would you explain to me what your
 9   relationship to the defendant in this case is.
10          MR. ADAMS:  I am the corporate secretary, and I'm also
11   the Canadian general counsel for the company.
12          THE COURT:  Have you taken any narcotic drugs,
13   medicine or pills or drunk any alcoholic beverages in the past
14   24 hours?
15          MR. ADAMS:  I did have a glass of wine with dinner
16   last night.
17          THE COURT:  Mr. Majoras, do you have any doubt as to
18   the competency of this defendant to proceed to plead in this
19   matter on behalf of the corporation?
20          MR. MAJORAS:  No, sir.
21          THE COURT:  Now, we read the Information together on
22   the 27th of October.  However, in view of the time that has
23   elapsed, I'm going to ask Mr. Culum to reiterate the
24   Information for the record, please.
25          MR. CULUM:  Thank you, Your Honor.
```

65

1       The caption:   *United States of America v. Arctic Glacier*

2   *International Inc.*, Violation, 15 U.S.C. Section 1.

3       Title:   Information.   Conspiracy To Restrain Trade, 15

4   U.S.C. Section 1.

5       The United States of America, acting through its attorneys,

6   charges:

7       1.  Arctic Glacier International Inc. is hereby made a

8   defendant on the charge stated below.

9       Caption:   Description Of The Offense.

10      Paragraph 2.   Beginning January 1st, 2001, and continuing

11  until at least July 17th, 2007, the exact dates being unknown

12  to the United States, the defendant and co-conspirators entered

13  into and engaged in a conspiracy to suppress and eliminate

14  competition by allocating packaged-ice customers in

15  southeastern Michigan and the Detroit, Michigan, metropolitan

16  area.   The charged conspiracy unreasonably restrained

17  interstate trade and commerce, in violation of Section 1 of the

18  Sherman Act, 15 U.S.C. Section 1.

19      The charged conspiracy consisted --

20      Paragraph 3.   Excuse me, Your Honor.

21      The charged conspiracy consisted of a continuing agreement,

22  understanding, and concert of action among the defendant and

23  co-conspirators, the substantial terms of which were to

24  allocate packaged-ice customers in southeastern Michigan and

25  the Detroit, Michigan, metropolitan area.

1    Caption:   II.   Means And Methods Of The Conspiracy.

2    Paragraph 4.   For the purposes of forming and carrying out

3 the charged conspiracy, the defendant and co-conspirators did

4 the following things, among other things:

5    (a) participated in meetings and conversations to discuss

6 packaged-ice customers in southeastern Michigan and the

7 Detroit, Michigan, metropolitan area;

8    (b) agreed during those meetings and conversations to

9 allocate packaged-ice customers in southeastern Michigan and

10 the Detroit, Michigan, metropolitan area;

11    (c) exchanged information during those meetings and

12 conversations for the purpose of monitoring and enforcing

13 adherence to the agreements to allocate customers in

14 southeastern Michigan and the Detroit, Michigan, metropolitan

15 area; and

16    (d) refrained from competing for packaged-ice customers

17 that were so allocated.

18    Caption:   III.   Defendant And Co-Conspirators.

19    Paragraph 5.   Arctic Glacier International Inc., the

20 defendant, is a corporation organized and existing under the

21 laws of the state of Delaware and does business in multiple

22 states, with its principal place of business in St. Paul,

23 Minnesota.   During the relevant period, the defendant acquired

24 various packaged-ice manufacturers doing business in Michigan.

25    Paragraph 6.   Various individuals and corporations not made

defendants in this Information participated as co-conspirators in the events charged and performed acts and made statements in furtherance of it.

Paragraph 7.  Whenever this Information refers to any act, deed, or transaction of any corporation, it means that the corporation engaged in the act, deed, or transaction by or through its officers, employees, agents or other representatives while they were actively engaged in the management, direction, control, or transactions of its business or affairs.

Caption:  IV.  Trade And Commerce.

Paragraph 8.  During the period covered by this Information, the defendant and co-conspirators:  manufactured packaged ice; (2) distributed packaged ice to retailers in southeastern Michigan and the Detroit, Michigan, metropolitan area; and (3) caused packaged ice to be purchased from, sold to, or distributed from or to, individuals and companies located inside and outside of southeastern Michigan and the Detroit, Michigan, metropolitan area.

Paragraph 9.  During the period covered by this Information, substantial quantities of packaged ice manufactured and sold by the defendant was shipped across state lines in a continuous and uninterrupted flow of interstate trade and commerce.

Paragraph 10.  The business activities of the defendant and

1   co-conspirators that are the subject of this Information were

2   within the flow of and substantially affected interstate trade

3   and commerce.

4        Caption:  Roman V.  Venue.

5        Paragraph 11.  The conspiracy charged in this Information

6   was formed and carried out within the Southern District of

7   Ohio, Western Division.  At least one of the conspiratorial

8   meetings or discussions described above took place in

9   Cincinnati, Ohio, which is located within the Southern District

10  of Ohio.  Acts in furtherance of this conspiracy were carried

11  out within the five years preceding the filing of this

12  Information, all in violation of Title 15, United States Code,

13  Section 1.

14       The Information is signed by Christine Varney, Scott

15  Hammond, Scott Watson, and myself and Marc Siegel.

16            THE COURT:  Do you have any questions about this

17  information, Mr. Adams?

18            MR. ADAMS:  No questions, Your Honor.

19            THE COURT:  Do you understand the nature and meaning

20  of this charge?

21            MR. ADAMS:  Yes, Your Honor.

22            THE COURT:  Have you told your lawyer everything you

23  know about this case?

24            MR. ADAMS:  I'm sorry.  I didn't quite hear the

25  question.

1    THE COURT:  Have you told your lawyer everything you

2  know about this case?

3    MR. ADAMS:  Yes, I have, Your Honor.

4    THE COURT:  Do you believe your lawyer is fully

5  informed about the facts and circumstances on which this charge

6  is based?

7    MR. ADAMS:  Yes, Your Honor.

8    THE COURT:  Has your lawyer fully informed counsel and

9  advised you on the nature and meaning of this charge?

10    MR. ADAMS:  Yes, Your Honor.

11    THE COURT:  Now, before the corporation can be found

12  guilty of this charge, the United States must prove beyond a

13  reasonable doubt certain essential elements, and the essential

14  elements of this charge are as follows.

15    And I can go on and say that I usually do that 12

16  individuals must find beyond a reasonable doubt that you did or

17  the corporation did these things, and the 12 individuals will

18  be selected at random from the community, and you and I will

19  participate in the selection of those 12 people.

20    The elements of this conspiracy are these:  that the

21  conspiracy, agreement, or understanding described in the

22  Information was knowingly formed and was in existence at or

23  about the time alleged, which is beginning on January 1, 2001,

24  and continuing until July 17th, 2007.

25    The next element is that the defendant corporation

1  knowingly became a member of the conspiracy, agreement, or

2  understanding, as charged, and the alleged conspiracy

3  constituted unreasonable restraint of interstate commerce, and

4  the offense was carried out in part in the Southern District of

5  Ohio within the five years preceding the filing of the

6  Information.

7      The Southern District of Ohio, for your information, is the

8  southern part of Ohio.  If you would draw a line across the

9  state just north of Columbus, therefore, the land south of that

10  line to the river, the Ohio River, is the Southern District.

11  The city of Cincinnati, Hamilton County, Butler County,

12  Clermont County, Warren County, are all in the Southern

13  District of Ohio, for your information.

14      Now, do you understand that if you enter your plea of

15  guilty, you will admit that the corporation did all of those

16  things beyond a reasonable doubt?

17              MR. ADAMS:  I understand that, Your Honor.

18              THE COURT:  Now, do you understand what the maximum

19  possible penalty for this is, for this crime is?

20              MR. ADAMS:  I have been told.  To be honest, I don't

21  recall the specific number at the moment.

22              THE COURT:  Well, we'll go over them together and make

23  sure that I get them all.

24      It's up to a hundred million dollar fine or two times the

25  gross pecuniary loss or gain, and up to five years' probation,

1   a $400 special assessment, and restitution.

2       Do you have any questions about this maximum penalty?

3           MR. ADAMS:  No questions, Your Honor.

4           THE COURT:  And as far as I know, there is no minimum

5   penalty.

6       Is that correct, Mr. Culum?

7           MR. CULUM:  Your Honor --

8           THE COURT:  It's at $20,000 for individuals.  Does

9   that also apply to corporations?

10          MR. CULUM:  You know, I've never thought that through.

11  I don't think there is a minimum.

12          THE COURT:  Well, anyway, there is no mandatory

13  minimum.  We'll put it that way.

14      So now with that maximum penalty in mind, do you understand

15  that the Court will impose a sentence that is not greater than

16  necessary to achieve the purposes of Congress set forth in 18,

17  United States Code, Section 3553?  And those factors or

18  elements that we will consider at the time of sentencing to

19  determine a just penalty in this case that is sufficient but

20  not greater than necessary are these:  the nature and circum-

21  stances of the offense, the history and characteristics of the

22  defendant, the need for the sentence imposed to reflect the

23  seriousness of the offense, to promote respect for the law, and

24  to provide just punishment for the offense, to afford adequate

25  deterrence to criminal conduct, to protect the public from

```
 1   further crimes the defendant may commit, and to provide the

 2   defendant with needed educational, vocational training, medical

 3   care, or other correctional treatment in the most effective

 4   manner --

 5        That will be interesting.

 6        -- the kinds of sentences available and the kinds of

 7   sentences and the sentencing range established by the

 8   application of the United States Guidelines to the particular

 9   facts of this case.

10        Now, I understand that you have discussed with your

11   attorneys the application of the Guidelines to this case.

12             MR. ADAMS:  Yes, I have, Your Honor.

13             THE COURT:  And what is your understanding as to the

14   Guidelines?

15             MR. ADAMS:  Well, the Guidelines are set out to give

16   the Court some range and some measuring stick.  My

17   understanding is that -- the discussion that we have had

18   through our counsel -- is something less than what the

19   Guidelines allow for.

20             THE COURT:  And do you understand that the Guidelines

21   are advisory as far as their effect upon my sentence is

22   concerned?

23             MR. ADAMS:  Yes, I understand that.

24             THE COURT:  And do you understand that my duty is to

25   impose a sentence that is sufficient but not greater than
```

1  necessary?

2          MR. ADAMS:  That is understood.

3          THE COURT:  And you understand that after the

4  corporation has been sentenced, they would have no right to

5  withdraw their guilty plea?

6          MR. ADAMS:  That is understood.

7          THE COURT:  Now, since you know the maximum penalty

8  the judge can impose, does the corporation still authorize you

9  to plead guilty?

10         MR. ADAMS:  Yes, Your Honor.

11         THE COURT:  And do you understand that I may or may

12  not place the defendant on probation?

13         MR. ADAMS:  I understand that, Your Honor.

14         THE COURT:  I advise you that under the Constitution

15  and laws of the United States, the corporation has the right to

16  plead not guilty.  It has the right to be tried by a jury, and

17  at such a speedy and public trial, it would have the right to

18  the assistance of a lawyer, the right to confront and cross-

19  examine witnesses against the corporation, and the right not to

20  be compelled to incriminate itself.  At such a trial it would

21  be presumed innocent until such time, if ever, as the

22  government established its guilt by legal evidence beyond a

23  reasonable doubt.  At such a trial it would be entitled to

24  compulsory process, to call witnesses on its behalf.

25      Do you understand that if your plea of guilty is accepted

1  that you must relinquish or give up all these rights that I

2  have mentioned?

3         MR. ADAMS:  That is understood, Your Honor.

4         THE COURT:  Do you understand that if you plead

5  guilty, there will not be a further trial of any kind in this

6  case, so that by pleading guilty the corporation is waiving and

7  relinquishing the right to a trial?

8         MR. ADAMS:  I understand that, Your Honor.

9         THE COURT:  Do you understand that if the plea is

10 accepted, the Court may impose the same penalty as though the

11 corporation pled not guilty, stood trial, and was convicted by

12 a jury?

13        MR. ADAMS:  I understand, Your Honor.

14        THE COURT:  If it pleads guilty, do you understand

15 that you'll also have to give up your right not to incriminate

16 the corporation, since I will have to ask you questions about

17 what the corporation did in order to satisfy me that you are

18 guilty as charged, and you will have to acknowledge the

19 corporate guilt?

20        MR. ADAMS:  That is understood.

21        THE COURT:  Are you willing to give -- is the

22 corporation willing to give up its right to a trial and the

23 other rights we have just discussed?

24        MR. ADAMS:  Yes, Your Honor.

25        THE COURT:  Proper plea agreements are permissible.

1    However, you and the lawyers have a duty to disclose the terms

2    of any plea agreement in this case.  I'm going to ask Mr. Culum

3    to display the Plea Agreement on the record.  I'm going to ask

4    you to follow along, because after he has concluded his

5    presentation, I will ask you some questions about it.

6         And, Mr. Axelrod, I will give you an opportunity to comment

7    if you choose to do so.

8              MR. ADAMS:  Thank you, Your Honor.

9              THE COURT:  Proceed, Mr. Culum.

10             MR. CULUM:  Thank you, Your Honor.

11        The Plea Agreement is entitled "*United States of America v.*

12   *Arctic Glacier International Inc.*"

13        Caption:  Plea Agreement.

14        The United States of America and Arctic Glacier

15   International Inc., the defendant, a corporation organized and

16   existing under the laws of the state of Delaware, and with its

17   principal place of business in St. Paul, Minnesota, hereby

18   enter into the following Plea Agreement pursuant to United

19   States -- pursuant to Rule 11 (c)(1)(C) of the Federal Rules of

20   Criminal Procedure:

21        Caption:  Rights Of Defendant.

22        Paragraph 1.  The defendant understands its rights:

23        (a) to be represented by an attorney;

24        (b) to be charged by Indictment;

25        (c) as a corporation organized and existing under the laws

1    of Delaware, to decline to accept service of the Summons in

2    this case, and to contest the jurisdiction of the United States

3    to prosecute this case against it in the United States District

4    Court for the Southern District of Ohio;

5        (d) to plead not guilty to any criminal charge brought

6    against it;

7        (e) to have a trial by jury, at which it would be presumed

8    not guilty of the charge and the United States would have to

9    prove every essential element of the charged offense beyond a

10   reasonable doubt for it to be found guilty;

11       (f) to confront and cross-examine witnesses against it and

12   to subpoena witnesses in its defense at trial;

13       (g) to appeal its conviction if it is found guilty; and

14       (h) to appeal the imposition of sentence against it.

15       Caption:  Agreement To Plead Guilty And Waive Certain

16   Rights.

17       Paragraph 2.  The defendant knowingly and voluntarily

18   waives the rights set out -- the rights set out in paragraph

19   1(b) through (g) above.  The defendant also knowingly and

20   voluntarily waives the right to file any appeal, any collateral

21   attack, or any other writ or motion, including but not limited

22   to, an appeal under 18 U.S.C. Section 3742 that challenges the

23   sentence imposed by the Court if that sentence is consistent

24   with or below the applicable Guidelines range in paragraph 8 of

25   this Plea Agreement, regardless of how the sentence is

determined by the Court.  This agreement does not affect the rights or obligations of the United States as set forth in United States -- in 18 U.S.C. Section 3742.  Nothing in this paragraph, however, shall act as a bar to the defendant perfecting any legal remedies it may otherwise have on appeal or collateral attack respecting claims of ineffective assistance of counsel or prosecutorial misconduct.  The defendant agrees that there is currently no known evidence of ineffective assistance of counsel or prosecutorial misconduct. Pursuant to Federal Rule of Criminal Procedure 7(b), the defendant will waive indictment and plead guilty at arraignment to a one-count Information to be filed in the United States District Court for the Southern District of Ohio.  The Information will charge the defendant with participating in a conspiracy to suppress and eliminate competition by agreeing with or -- with one or more other packaged-ice manufacturers to allocate customers in southeastern Michigan and the Detroit, Michigan, metropolitan area, beginning January 1st, 2001, and continuing until at least July 17th, 2007, in violation of the Sherman Antitrust Act, 15 U.S.C. Section 1.

Paragraph 3.  The defendant, pursuant to the terms of this Plea Agreement, will plead guilty to the criminal charge described in paragraph 2 above and will make a factual admission of guilt to the Court in accordance with Federal Rule of Criminal Procedure 11, as set forth in paragraph 4 below.

1    Caption.  Factual Basis For Offense Charged.

2    Paragraph 4.  Had this case gone to trial, the United

3    States would have presented evidence sufficient to prove the

4    following facts:

5    (a) For purposes of this Plea Agreement, the relevant

6    period is that period beginning January 1st, 2001, and

7    continuing until at least July 17th, 2007.  During the relevant

8    period, the defendant was a corporation organized and existing

9    under the laws of Delaware.  During the relevant period, the

10   defendant acquired various packaged-ice manufacturers doing

11   business in Michigan.  During the relevant period, the

12   defendant, through its parent and subsidiary corporations,

13   collectively "Arctic Glacier," was a producer of packaged ice

14   in multiple states and was engaged in the sale of packaged ice.

15   Packaged ice is marketed for human consumption and is sold in

16   blocks and various bag sizes.  During the relevant period, the

17   defendant's Michigan subsidiaries employed more than 200 full-

18   time-equivalent employees, but less than 1,000.  During the

19   relevant period, Arctic Glacier's sales of packaged ice

20   affected by the conspiracy totaled 50.7 million.

21   Paragraph (b).  During the relevant period, the defendant,

22   through certain of its executives and employees of its

23   subsidiary corporations and its predecessor company acquired in

24   December 2004, participated in a conspiracy to allocate

25   customers of packaged ice sold in southeastern Michigan and the

Detroit, Michigan, metropolitan area.  In furtherance of the
conspiratorial activity, the defendant, through certain of its
executives and employees of its subsidiary corporations and
predecessor company acquired in December 2004, engaged in
discussions and attended meetings with representatives of one
or more other packaged-ice producers.  During these discussions
and meetings, agreements were reached to allocate customers of
packaged ice in southeastern Michigan and the Detroit,
Michigan, metropolitan area.

(c) During the relevant period, packaged ice was sold by
one or more of the conspirator firms, and equipment and
supplies necessary to the production and distribution of
packaged ice, as well as payments for packaged ice, traveled in
interstate commerce.  The business activities of Arctic Glacier
and its co-conspirator in connection with the production and
sale of packaged ice affected by the conspiracy were within the
flow of, and substantially affected, interstate trade and
commerce.

(d) Acts in furtherance of this conspiracy were carried out
within the Southern District of Ohio, Western Division.  At
least one of the conspiratorial meetings or discussions
described above took place in Cincinnati, Ohio, which is
located within the Southern District of Ohio.

Caption:  Possible Maximum Sentence.

Paragraph 5.  The defendant understands that the statutory

maximum penalty which may be imposed against it upon conviction for a violation of Section 1 of the Sherman Antitrust Act is a fine in the amount equal to the greatest of:

(a) 100 million, 15 U.S.C. Section 1;

(b) twice the gross pecuniary gain the conspirators derived from the crime, 18 U.S.C. Section 3571(c) and (d); or

(c) twice the gross pecuniary loss caused to the victims of the crime by the conspirators, 18 U.S.C. Section 3571(c) and (d).

Paragraph 6.  In addition, the defendant understands that:

(a) pursuant to 18 U.S.C. Section 3561(c)(1), the Court may impose a term of probation of at least one year, but not more than five years;

Paragraph (b) pursuant to Section 8B1.1 of the United States Sentencing Guidelines or 18 U.S.C. Sections 3563(b)(2) or 3663(a)(3), the Court may order it to pay restitution to the victims of the offense; and

(c) pursuant to 18 U.S.C. Section 3013(a)(2)(B), the Court is required to order the defendant to pay a $400 special assessment upon conviction for the charged crime.

Caption:  Sentencing Guidelines.

Paragraph 7.  The defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in effect on the day of sentencing, along with other factors set forth in 18 U.S.C. Section

1    3553(a), in determining and imposing sentence.  The defendant

2    understands that the Guidelines determination will be made by

3    the Court by a preponderance of the evidence standard.  The

4    defendant understands that although the Court is not ultimately

5    bound to impose a sentence within the applicable Guideline

6    range, its sentence must be reasonable based upon consideration

7    of all relevant sentencing factors set forth in 18 U.S.C.

8    Section 3553(a).  Pursuant to 18 -- pursuant to United States

9    Sentencing Guideline Section 1B1.8, the United States agrees

10   that self-incriminating information that the defendant provides

11   to the United States pursuant to this Plea Agreement will not

12   be used to increase the volume of affected commerce

13   attributable to the defendant or in determining the defendant's

14   applicable Guideline range, except to the extent provided in

15   United States Sentencing Guidelines Section 1B1.8(b).

16        Sentencing Agreement.

17        Paragraph 8.  Pursuant to Federal Rule of Criminal

18   Procedure 11(c)(1)(C), the United States and the defendant

19   agree that the appropriate disposition of this case is, and

20   agree to recommend jointly that the Court impose, a sentence

21   requiring the defendant to pay the United States a criminal

22   fine of $9 million, payable in installments as set forth below,

23   with interest accruing under 18 U.S.C. Section 3612(f)(1)-(2).

24        Paragraph (a).  The defendant understands that the Court

25   will order it to pay a $400 special assessment, pursuant to 18

1  U.S.C. Section 3013(a)(2)(B), in addition to any fine imposed;

2      (b) the United States and defendant agree to recommend, in

3  the interest of justice pursuant to 18 U.S.C. Section

4  3572(d)(1), the United States Sentencing Guideline 8C3.2(b),

5  that the fine be paid in the following installments:  within 30

6  days of imposition of sentencing, $1 million plus any agreed

7  interest; at the one-year anniversary of imposition of the

8  sentence, "anniversary," $1 million plus any accrued interest;

9  at the two-year anniversary, $1.5 million plus any accrued

10  interest; at the three-year anniversary, $1.5 million plus any

11  accrued interest; at the four-year anniversary, $1.5 million

12  plus any accrued interest; and at the five-year anniversary,

13  $2.5 million plus any accrued interest; provided, however, that

14  the defendant shall have the option at any time before the

15  five-year anniversary of prepaying any part of the remaining

16  balance plus any accrued interest then owing on the fine.

17      Paragraph 9.  The parties agree that they are not aware at

18  this time of any aggravating or mitigating circumstance of a

19  kind, or to a degree, not adequately taken into consideration

20  by the United States Sentencing Commission in formulating the

21  Sentencing Guidelines justifying a departure pursuant to United

22  States Sentencing Guidelines Section 5K2.0.  The parties agree

23  not to seek or support any sentence outside of the Guidelines

24  range nor any Guidelines adjustment for any reason that is not

25  set forth in this Plea Agreement.

1    Paragraph 10.  The United States and the defendant agree

2   that the applicable Guidelines fine range exceeds the fine

3   contained in the recommended sentence set out in paragraph 8

4   above.  Subject to the full and continuing cooperation of the

5   defendant as set forth in paragraph 14 of this Plea Agreement,

6   and prior to the sentencing in this case, the United States

7   agrees it will not -- that it will make a motion, pursuant to

8   United States Sentencing Guidelines Section 8C4.1, for a

9   downward departure from the Guideline fine range and will

10  request that the Court impose the recommended sentence set out

11  in paragraph 8 of this Plea Agreement because of the

12  defendant's substantial assistance in the government's

13  investigation and prosecution of the violation of federal

14  criminal law in the packaged-ice industry.

15    Paragraph 11.  Subject to the ongoing, full, and truthful

16  cooperation of the defendant described in paragraph 14 of this

17  Plea Agreement, and before sentencing in this case, the United

18  States will fully advise the Court and the probation office of

19  the fact, manner, and extent of defendant's cooperation and its

20  commitment to prospective cooperation with the United States'

21  investigation and prosecutions, all material facts relating to

22  the defendant's involvement in the charged offense, and all

23  other relevant conduct.

24    Paragraph 12.  The United States and the defendant

25  understand that the Court retains complete discretion to accept

1   or reject the recommended sentence.

2      (a) If the Court does not accept the recommended sentence,

3   the United States and the defendant agree that this Plea

4   Agreement, except for paragraph 12(b) below, shall be rendered

5   void.

6      (b) If the Court does not accept the recommended sentence,

7   the defendant will be free to withdraw its guilty plea, Federal

8   Rule of Criminal Procedure 11(c)(5) and (d).  If the defendant

9   withdraws its plea of guilty, this Plea Agreement, the guilty

10  plea, and any statements made in the course of any proceedings

11  under Federal Rule of Criminal Procedure 11 regarding the

12  guilty plea or this Plea Agreement or made in the course of

13  plea discussion with an attorney for the government shall not

14  be admissible against the defendant in any criminal or civil

15  proceeding, except as otherwise provided in Federal Rule of

16  Evidence 410.  In addition, the defendant agrees that if it

17  withdraws its guilty plea pursuant to this subparagraph of the

18  Plea Agreement, the statute of limitations period for any

19  offense referred to in paragraph 16 of this Plea Agreement

20  shall be tolled for the period between the date of the signing

21  of the Plea Agreement and the date the defendant withdrew its

22  guilty plea or for a period of 60 days after the date of the

23  signing of the Plea Agreement, whichever period is greater.

24     Paragraph 13.  In light of the availability of civil causes

25  of action available pursuant to 15 U.S.C. Section 15, the

1  United States agrees that it will not seek a restitution order

2  for the offense charged in the Information.

3      Caption:  Defendant's Cooperation.

4      Paragraph 14.  Arctic Glacier will cooperate fully and

5  truthfully with the United States in the prosecution of this

6  case, the conduct of the current federal investigation of

7  violations of federal antitrust and related criminal laws

8  involving the sale of packaged ice in the United States, any

9  other federal investigation resulting therefrom, and any

10  litigation or other proceedings arising or resulting from any

11  such investigation to which the United States is a party.  The

12  ongoing, full, and truthful cooperation of Arctic Glacier shall

13  include, but not be limited to:

14      (a) producing to the United States all non-privileged

15  documents, information, and other materials wherever located,

16  in the possession, custody, or control of Arctic Glacier,

17  requested by the United States in connection with any federal

18  proceeding;

19      (b) using its best efforts to secure the ongoing, full, and

20  truthful cooperation, as defined in paragraph 15 of this Plea

21  Agreement, of its current and former directors, officers, and

22  employees of Arctic Glacier as may be requested by the United

23  States, but excluding Keith E. Corbin, Gary D. Cooley, and

24  Frank G. Larson, including making these persons available in

25  the United States and at other mutually-agreed-upon locations,

at the defendant's expense, for interviews and the provision of testimony in grand jury, trial, and other judicial proceedings in connection with any federal proceeding.

Paragraph 15.  The ongoing, full, and truthful cooperation of each person described in paragraph 14(b) above will be subject to the procedures and protections of this paragraph, and shall include, but not be limited to:

(a) producing all non-privileged documents, including claimed personal documents, and other materials, wherever located, requested by attorneys and agents of the United States;

(b) making himself or herself available for interviews, not at the expense of the United States, upon the request of attorneys and agents of the United States;

(c) responding fully and truthfully to all of the inquiries of the United States in connection with any federal proceeding, without falsely implicating any person or intentionally withholding any information, subject to the penalties of making false statements, 18 U.S.C. Section 1001, and obstruction of justice, 18 U.S.C. Section 1503;

(d) otherwise voluntarily providing the United States with any non-privileged material or information not requested in (a) through (c) of this paragraph that he or she may have that is related to any federal proceeding;

(c) when called upon to do so by the United States in

connection with any federal proceeding, testifying in grand

jury, trial, and other judicial proceedings fully, truthfully,

and under oath, subject to the penalties of perjury, 18 U.S.C.

Section 1621, making false statements or declarations in grand

jury or court proceedings, 18 U.S.C. Section 1623, contempt, 18

U.S.C. Section 401 and 402, and obstruction of justice, 18

U.S.C. Section 1503, et sequentes; and

   (f) agreeing that, if the agreement not to prosecute him or

her in this Plea Agreement is rendered void under paragraph

17(c), the statute of limitations period for any relevant

offense as defined in paragraph 15(a) will be tolled as to him

or her for the period between the date of the signing of this

Plea Agreement and six months after the date that the United

States gave notice of its intent to void its obligation to that

person under the Plea Agreement.

   Caption:  Government's Agreement.

   Paragraph 16.  Upon acceptance of the guilty plea called

for by this Plea Agreement, and subject to the cooperation

requirements of paragraph 14 of this Plea Agreement, the United

States agrees that it will not bring further criminal charges

against Arctic Glacier for any act or offense committed before

the date of this Plea Agreement that was undertaken in

furtherance of an attempted or completed antitrust conspiracy

involving the sale of packaged ice in the United States or

undertaken in connection with any investigation of such a

conspiracy.  The non-prosecution terms of this paragraph do not apply to civil matters of any kind, to any violation of federal tax or securities laws, or to any crime of violence.

Paragraph 17.  The United States agrees to the following:

(a) Upon the Court's acceptance of the guilty plea called for by this Plea Agreement and the imposition of its sentence, and subject to the exceptions noted in paragraph 15(c), the United States will not bring criminal charges against any current or former director, officer, or employee of Arctic Glacier for any act or offense committed before the date of this Plea Agreement and while that person was acting as a director, officer, or employee of Arctic Glacier that was undertaken in furtherance of an antitrust conspiracy involving the sale of packaged ice in the United States or undertaken in connection with any investigation of such a conspiracy, "relevant offense," except that the protections in this paragraph shall not apply to Keith E. Corbin, Gary D. Cooley, and Frank G. Larson;

(b) Should the United States determine that any current or former director, officer, or employee of Arctic Glacier may have information relevant to any federal proceeding, the United States may request that person's cooperation under the terms of this Plea Agreement by written request delivered to counsel for the individual, with a copy to the undersigned counsel for the defendant, or if the individual is not known by the United

States to be represented, to the undersigned counsel for the defendant;

(c) If any person requested to provide cooperation under paragraph 14(b) fails to comply with this obligation, with the obligations under paragraph 15, then the terms of this Plea Agreement as they pertain to that person, and the agreement not to prosecute that person granted in this Plea Agreement, shall be rendered void;

(d) Except as provided in paragraph 16(e), information provided by a person described in paragraph 16(b) to the United States under the terms of this Plea Agreement pertaining to any relevant offense, or any information directly or indirectly derived from that information, may not be used against that person in a criminal case, except in a prosecution for perjury, 18 U.S.C. Section 1621, making a false statement or declaration, 18 U.S.C. Section 1001 and 1623, or obstruction of justice, 18 U.S.C. 1503, et sequentes;

(e) If any person who provides information to the United States under this Plea Agreement fails to comply fully with the obligations under paragraph 15 of this Plea Agreement, the agreement in paragraph 16(d) not to use that information or any information directly or indirectly derived from it against that person in a criminal case shall be rendered void;

(f) The non-prosecution terms of this paragraph do not apply to civil matters of any kind, to any violation of the

federal tax or securities laws, or to any crimes of violence; and

(g) Documents provided under paragraphs 14(a) and 15(a) shall be deemed responsive to outstanding grand jury subpoenas issued to the defendant.

Paragraph 18.  The United States agrees that when any person travels to the United States for interviews, grand jury appearances, or court appearances pursuant to this Plea Agreement, or for meetings with counsel in preparation therefor, the United States will take no action, based upon any relevant offense, to subject such person to arrest, detention, or service of process, or to prevent such person from departing the United States.  This paragraph does not apply to an individual's commission of perjury, 18 U.S.C. Section 1621, making false statements, 18 U.S.C. Section 1001, making false statements or declarations in grand jury or court proceedings, 18 U.S.C. Section 1623, obstruction of justice, 18 U.S.C. Section 1503, or contempt, 18 U.S.C. Section 401-402, in connection with any testimony or information provided or requested in any federal proceeding.

Paragraph 19.  The defendant understands that it may be subject to administrative action by federal or state agencies other than the United States Department of Justice, Antitrust Division, based upon the conviction resulting from this Plea Agreement, and that this Plea Agreement in no way controls

whatever action, if any, other agencies may take.  However, the

United States agrees that, if requested, it will advise the

appropriate officials of any governmental agency considering

such administrative action of the fact, manner, and extent of

the cooperation of Arctic Glacier as a matter for that agency

to consider before determining what administrative action, if

any, to take.

Caption:  Representation By Counsel.

Paragraph 20.  The defendant has been represented by

counsel and is fully satisfied that its attorneys have provided

competent legal representation.  The defendant has thoroughly

reviewed this Plea Agreement and acknowledges that counsel has

advised it of the nature of the charge, any possible defenses

to the charge, and the nature and range of possible sentences.

Caption:  Voluntary Plea.

Paragraph 21.  The defendant's decision to enter into this

Plea Agreement and to tender a plea of guilty is freely and

voluntarily made and is not the result of force, threats,

assurances, promises, or representations other than the

representations contained in this Plea Agreement.  The United

States has made no promises or representations to the defendant

as to whether the Court will accept or reject the

recommendations contained within this Plea Agreement.

Violation Of Plea Agreement.

Paragraph 22.  The defendant agrees that, should the United

States determine in good faith, during the period that any federal proceeding is pending, that Arctic Glacier has failed to provide full and truthful cooperation, as described in paragraph 14 of this Plea Agreement, or has otherwise violated any provision of this Plea Agreement, the United States will notify counsel for the defendant in writing by personal or overnight delivery or facsimile transmission and may also notify counsel by telephone of its intention to void any of its obligations under this Plea Agreement, except its obligations under this paragraph, and Arctic Glacier shall be subject to prosecution for any federal crime of which the United States has knowledge including, but not limited to, the substantive offenses relating to the investigation resulting in this Plea Agreement.  The defendant agrees that, in the event that the United States is released from its obligations under this Plea Agreement and brings a criminal charge against Arctic Glacier for any offense referred to in paragraph 14 of this Plea Agreement, the statute of limitations period for such offense will be tolled for the period between the date of the signing of this Plea Agreement and six months after the date the United States gave notice of its intent to void its obligations under this Plea Agreement.

Paragraph 23.  The defendant understands and agrees that in any further prosecution of it resulting from the release of the United States from its obligations under this Plea Agreement,

because of Arctic Glacier's violation of the Plea Agreement,
any document, statement, information, testimony, or evidence
provided by it or any individual identified by the United
States pursuant to paragraphs 14(b) or 15(b) to attorneys or
agents of the United States, federal grand juries, or courts,
and any leads derived therefrom, may be used against it in any
such further prosecution.  In addition, Arctic Glacier
unconditionally waives its right to challenge the use of such
evidence in any further prosecution, notwithstanding the
protections of Federal Rule of Evidence 408 and Federal Rule of
Evidence 410.

Entirety Of The Agreement, caption.

Paragraph 24.  This Plea Agreement constitutes the entire
agreement between the United States and the defendant
concerning the disposition of the criminal charge in this case.
The Plea Agreement cannot be modified except in writing, signed
by the United States and the defendant.

Paragraph 25.  The undersigned is authorized to enter this
Plea Agreement on behalf of the defendant as evidenced by the
resolution of the board of directors of the defendant attached
and incorporated by reference in this Plea Agreement.

Paragraph 26.  The undersigned attorneys for the United
States have been authorized by the Attorney General of the
United States to enter this Plea Agreement on behalf of the
United States.

1     The Plea Agreement, unfortunately, is not dated.  It is

2 signed by Hugh Adams, corporate secretary, Arctic Glacier

3 International; John Majoras, counsel, Jones Day; signed by

4 myself, Kevin Culum.

5          THE COURT:  Mr. Adams, do you have any questions about

6 this Plea Agreement?

7          MR. ADAMS:  No questions, Your Honor.

8          THE COURT:  Has the Plea Agreement correctly set forth

9 your agreements and the corporation's agreements that they have

10 made in this document?

11          MR. ADAMS:  Yes, it does, Your Honor.

12          THE COURT:  And are those representations and

13 agreements true?

14          MR. ADAMS:  They are true.

15          THE COURT:  I would like just a clarification.  From

16 my information, it would be the 14(b) and 15, the relationship

17 between 14(b) and 15.  The 14(b) discusses or mentions the

18 three defendants that I've already accepted a plea to, and I

19 just want to be sure I understand what in the world's going on

20 here, because I'm not going to -- right up front, I'm not going

21 to accept any interference with my conduct of those cases.

22          MR. CULUM:  Your Honor, we use the term "carve out"

23 individuals from a plea agreement, so that those three

24 individuals could not seek the protection of this Plea

25 Agreement and we would be -- we resolved their liability

1   independent of the company.  And that's the interaction of the

2   two, that Arctic Glacier can't insist on their cooperation, nor

3   can the individuals seek the protections of the Plea Agreement.

4   So they are carved out.

5        Does that answer your question, Your Honor?

6             THE COURT:  Is that your understanding, Mr. Majoras?

7             MR. MAJORAS:  Yes, it is, Your Honor.

8             THE COURT:  My problem being is that I want to be

9   absolutely assured that this Plea Agreement won't become void

10  because of what I do in the three independent cases involved,

11  that I am involved in.

12            MR. CULUM:  Your Honor, the individuals know that they

13  cannot claim the protection of this Plea Agreement and that

14  their plea agreement resolves their own liability.

15            MR. MAJORAS:  That is our understanding as well, Your

16  Honor.

17            THE COURT:  All right.  Mr. Adams, is that the

18  corporate's understanding?

19            MR. ADAMS:  It is, Your Honor.

20            THE COURT:  Then if you would explain the purpose of

21  17(g).

22            MR. CULUM:  Your Honor, because of the protections of

23  6(e), we typically include these documents so that we don't

24  have to continually provide serial grand jury subpoenas, that

25  the documents that we identify are considered grand jury

1   documents.

2       My understanding is that in civil litigation there's

3   certain issues as to whether something was subpoenaed by the

4   grand jury or not, and the Department typically puts these in

5   all plea agreements, corporate plea agreements, so that it

6   clarifies that these documents are supplied pursuant to the

7   grand jury subpoena.

8           THE COURT:  The reason I ask the question is, does it

9   interfere with my obligation to administer the Federal Criminal

10  Rule of Procedure 6(e) if I get involved in a determination of

11  whether these documents will be released?

12          MR. CULUM:  Well, the documents that would be provided

13  to you, that would be your issue, and those documents -- we

14  would have to think that through, but this specifically only

15  speaks about documents that are provided in the future to the

16  United States Department of Justice.

17          THE COURT:  And you understand my concern, because I

18  do not want to disrupt this proceeding in the event I decide

19  that some grand jury --

20      And I assume the grand juries are meeting in this district.

21          MR. CULUM:  Your Honor, I certainly can't answer that,

22  but I could talk to you ex parte about where.

23          THE COURT:  All right.  But anyway, what I'm concerned

24  with, if I am responsible to administer an issue that arises

25  under 16(e) in relationship to the documents that may come to

1   my attention belonging to Arctic, I wonder if that's intended

2   to interfere with that decision.

3          MR. CULUM:  Your Honor, it should not.  If they're

4   documents that are provided to you, I think the issue would

5   just be -- my understanding is anything provided to the Court

6   along PSRs are considered confidential, and the release has

7   their own -- the rules of release are independent of 6(e).

8      If we provide you information, we're providing it

9   confidentially.  We're not -- you know, we're not going to be

10  releasing 6(e) information necessarily, so this -- this

11  paragraph goes specifically to documents that we request from

12  Arctic Glacier either in the past or in the future, but this is

13  not binding you in terms of the 6(e) issue.  I mean, I think

14  the PSR issue is a separate issue, but the 6(e) issue, I think

15  we can resolve that.

16     And, Your Honor, I wanted to address something, that there

17  was a public announcement by Arctic Glacier in March of 2007

18  that they had received a grand jury subpoena from the Eastern

19  District of Michigan.  So that's public information which you

20  probably are aware of, but I just thought that I would alert

21  you to that they announced publicly that they received a grand

22  jury subpoena from the Eastern District of Michigan.

23         THE COURT:  Mr. Majoras, do you wish to add anything

24  to the record on that point?

25         MR. MAJORAS:  No, sir.  What Mr. Culum said is

1  consistent with my understanding.

2         THE COURT:  Mr. Adams, do you have any questions about

3  the situation that I've tried to straighten out?  I'm not so

4  sure I have.  But I raise the issue that I have some concern

5  that I do not intend to lose any control over my obligations to

6  administer the law in this case by this Plea Agreement.

7         MR. ADAMS:  I don't have any questions.  My under-

8  standing is that your jurisdiction is unfettered.

9         THE COURT:  All right.  Thank you.

10      Aside from -- well, has anyone made any promise, other than

11  the Plea Agreement, that induced the corporation to plead

12  guilty?

13         MR. ADAMS:  No, Your Honor.

14         THE COURT:  And aside from the Plea Agreement, which

15  we've been discussing, has any person, including an officer or

16  agent of the government, a lawyer, anyone, promised or even

17  suggested that the corporation should receive a lighter

18  sentence or any other form of leniency if it pleads guilty?

19         MR. ADAMS:  No, Your Honor.

20         THE COURT:  And have any threats been made which

21  induced the corporation and its board to plead guilty?

22         MR. ADAMS:  There have been no threats made, Your

23  Honor.

24         THE COURT:  Mr. Axelrod, is there anything you wish to

25  discuss at this time?

1          MR. AXELROD:  There is, Your Honor.  May I use the

2     lectern?

3          THE COURT:  If you wish.

4          MR. AXELROD:  Thank you.  My training and 25 years of

5     experience cause me to want to stand at a lectern when I

6     address a federal Court.

7       First, Your Honor, I assure you that the size of the stack

8     of papers in front of me is in no way indicative of the length

9     of what I hope to tell the Court.

10       I first wanted to apprise the Court of our discussion since

11    the last proceeding with both the government and with the

12    defendant.  Two lawyers involved in the class action in the

13    Eastern District of Michigan traveled to Cleveland, and I drove

14    to Cleveland, to meet with Mr. Culum, Mr. Lyon, their chief Mr.

15    Watson, and one other attorney from the Antitrust Division, and

16    discussed our concerns at considerable length.  I've also

17    spoken to Mr. Majoras by telephone about our concerns.

18       I think I'm a pretty persuasive guy, but they are equally

19    committed to this Plea Agreement and were unwilling to agree to

20    any modifications of it to accommodate the interests of the

21    victims.  So for that reason I'm here to alert the Court to our

22    concerns.  I'm not going to ask the Court today for any

23    specific relief.  We're going to continue to try to talk with

24    the parties and resolve our objections amicably, but there may

25    come a time, in fact, I think, based on what I've been told in

1   the last week or so, it's probably likely that we will wind up

2   submitting written objections to the Court.

3       Your Honor, we have two interests in this proceeding.   One

4   is in sunlight, in having all of the facts regarding the

5   conspiracy that's involved in this case come to light, and the

6   other interest is in the preservation of assets to pay

7   restitution.   As the Court's comments at the last proceeding

8   suggested, we are concerned about the amount of restitution, on

9   which I'll comment in a moment, but we're also concerned about

10  the defendant's ability to pay either the fine requested in the

11  Plea Agreement or the restitution that we hope to request.

12      First, with respect to disclosure of the conspiracy, Your

13  Honor, we believe there's evidence certainly sufficient to

14  cause the Court to want to inquire about the existence of a

15  nationwide conspiracy.   The existence of a nationwide

16  conspiracy to allocate territory and fixed prices would be

17  relevant conduct under the Guidelines under Section

18  1B1.3(a)(2).

19      First, Your Honor, there is a whistleblower named Mr.

20  McNulty who alleges that there was a nationwide conspiracy and

21  has brought litigation in connection with that.   Second,

22  there's the fact that even in the warm weather states where it

23  would make sense for this defendant, Ready Ice, and Home City

24  Ice to compete, there is no competition, which we believe

25  suggests -- particularly in light of the conspiracy that's

being admitted here today -- a conspiracy to allocate

territory.  We think it would defy credulity to believe that it

was a coincidence that in states like Tennessee and Florida

these companies simply choose not to compete without having

agreed not to compete.

Third, Your Honor, the Plea Agreement reflects the

nationwide scope of the conspiracy.  First, there is a 1B1.8

cooperation provision which the Court has already heard about,

and having been a federal prosecutor for seven and a half

years, I can assure the Court that the government doesn't put

those provisions in plea agreements unless there actually is

something for the defendant to say, and there's reason to

believe that they have information useful to the government.

So that suggests to us that there is more here than meets the

eye and more here than has yet been publicly disclosed.

Second, Your Honor, there is the fact that the government

has conferred nationwide immunity on Arctic Glacier and on a

number of individuals related to Arctic Glacier.  We believe

that any immunity -- if the conspiracy is limited to the

Eastern District of Michigan, then the immunity should be

limited to the Eastern District of Michigan.  If the conspiracy

goes further, then we understand why the company has requested

and received transactional immunity for a broader geographic

scope, but we think logic suggests that, if you put all these

things together, you have substantial evidence that should

1   cause the Court to be concerned about this:  the Plea Agreement

2   provisions, plus the lack of competition nationwide, plus the

3   fact that the defendant has already admitted that it has

4   allocated territory and fixed prices, which we think equals a

5   nationwide conspiracy.

6       Your Honor, we are concerned that the government should

7   ensure the disclosure to this Court of all relevant facts.

8   We've spoken to the government about that, and the government

9   has simply told us that they're aware of their duty and will

10  adhere to it, but they won't tell us what their view of their

11  duty is.  So we, frankly, don't know whether the government

12  intends to disclose to the Court anything beyond the facts in

13  relation to this specific conspiracy described in the

14  Information and in the Plea Agreement.

15      We believe that level of disclosure is required by Section

16  3553 and by the Sentencing Guidelines, and as well as by

17  paragraph 11 of the Plea Agreement which specifically provides

18  for disclosure of all relevant facts.

19      There is the issue of Section 1B1.8 of the Guidelines, but

20  as I'm sure the Court knows from experience, Section 1B1.8 does

21  not make information provided under its protection and as part

22  of a cooperation agreement a secret.  It simply means that that

23  information may not be used to establish the Guideline range,

24  but such information is routinely used to set the sentence

25  within the Guideline range.  And now in light of *Booker* and the

1   fact that the Guidelines are not mandatory but are merely

2   advisory, we believe that 3553 requires that that information

3   be disclosed to the Court as relevant to the sentence that is

4   to be imposed.

5        Additionally, we are concerned that Mr. McNulty, the

6   whistleblower, has alleged that someone at Arctic Glacier has

7   attempted to intimidate him, which causes us concern about

8   potential suppression of the facts by Arctic Glacier, and we

9   believe should cause the government increased interest in

10  ensuring that there's full disclosure rather than disclosure

11  that merely is convenient for the company to make in this

12  proceeding while resisting any disclosure at all in the class

13  action pending in the Eastern District of Michigan.

14       Your Honor, the criminal case is the appropriate forum for

15  that disclosure.  Normally one might say leave the civil case

16  to the civil case and keep the criminal case in the criminal

17  case and never the twain shall meet, except that in this case

18  the Plea Agreement specifically provides that the government

19  will not seek restitution because of the availability of a

20  civil remedy.

21       So, in a way, the government has now made what goes on in

22  the civil case material to the Court's decision in the criminal

23  case.  And for that reason, we believe that the Court, in the

24  interest of the victims, should be concerned about ensuring

25  full disclosure.

1        As things presently stand, Arctic Glacier is using the

2   confidentiality of its conversations with the government as

3   both a sword and a shield.  They're using it as a shield in

4   this proceeding to protect themselves under the Sentencing

5   Guidelines and to attempt to minimize their sentence.  They're

6   using it a sword in the criminal -- or in the civil case where

7   they have now moved to dismiss the indictment on the grounds of

8   the *Twombly* case, arguing that the --

9            THE COURT:  You say the indictment?

10           MR. AXELROD:  I'm sorry.  The Complaint.  I apologize,

11  Your Honor.

12       They have moved to dismiss the civil Complaint under

13  *Twombly*, arguing that the class plaintiffs do not have -- have

14  not made sufficient allegations to cause the Court to go

15  forward.

16       So in this proceeding they've drawn a little box around the

17  facts that they hope to disclose, and in that proceeding then

18  they're saying the facts haven't become public and -- or the

19  facts aren't in the Complaint and, therefore, the Complaint

20  should be dismissed, all the while saying no restitution in the

21  criminal case because of the civil case which we've moved to

22  dismiss.  Now, we don't think that's the way things should

23  proceed, and we hope the Court doesn't either.

24       Now, the kind of disclosure we're talking about could take

25  a variety of forms.  There could be an allocution by the

1  defendant in this case or there could be cooperation in the

2  civil case.  As I'm sure the Court has experienced in tax

3  cases, just to cite one example, it routinely is a condition of

4  probation that the defendant cooperate in the assessment and

5  collection of a tax that's due as a result of a criminal case,

6  and we believe that such a condition of probation would be

7  appropriate here.

8      We don't ask that the defendant confess judgment in a civil

9  case, not at all.  But we do ask that the defendant not

10 stonewall discovery and that all of the facts be allowed to be

11 brought to light in the civil case if the defendant is not

12 going to allocute fully in this case.  And, in fact, both

13 remedies may be appropriate, because there certainly would be

14 follow-up questions and other things to do in the civil case

15 after a basic allocution of the facts.

16     Now, Your Honor, we're also concerned about the scope of

17 immunity, as I mentioned earlier.  If the conspiracy is limited

18 to the Eastern District of Michigan, then the immunity should

19 be too.  That actually is what the Antitrust Division's grand

20 jury practice manual says.  At Chapter 9, page 41, it says that

21 immunity should be limited to the places where the defendant

22 does business.  In this case, again, as Your Honor has heard,

23 the immunity would be nationwide.

24     Now, I've spoken to Mr. Majoras about this, and we had some

25 disagreement about what is routine in these kinds of cases, and

1    it was his understanding that nationwide immunity is, in fact,

2    a standard provision.  So what we did was we looked and we

3    found a couple of plea agreements, and these are just samples.

4    There certainly are more.

5         May I approach, Your Honor?

6              THE COURT:  Show them to the courtroom deputy.

7              MR. AXELROD:  I do have copies for everyone.  May I,

8    Your Honor?

9              COURTROOM DEPUTY:  Mr. Axelrod.

10             MR. AXELROD:  Thank you (handing document).

11             THE COURT:  There's a trap door in front there.  You

12   don't want to step there.

13             MR. AXELROD:  Thank you.  My wife and daughter might

14   object if I stepped through it.

15        Referring to the Plea Agreement in United States against

16   Woodson Associates, paragraph 16 is the immunity provision, and

17   it actually is on page -- it's on page 12.  And it specifically

18   limits the immunity to offenses occurring in connection with

19   offenses at the CCAFS, is what it's referred to there.  It's

20   the Cape Canaveral Air Force Station.  So this is an instance,

21   and again, there are many more of these.  These are just the

22   ones that I brought.  But this is an instance where the

23   immunity as provided in the Antitrust Division manual

24   appropriately is limited to the place where the conspiracy

25   occurred.

1        The other agreement, Your Honor, in United States against

2   Builder's Concrete, in paragraph 16, which begins on page 8,

3   the relevant language is on page 9, limits the immunity to the

4   Indianapolis, Indiana, metropolitan area because that is the

5   geographic locus of the conspiracy.

6        THE COURT:  Which section is it that you're referring

7   to in the Builder's Concrete Plea Agreement?

8        MR. AXELROD:  Your Honor, it's paragraph 16(a),

9   beginning on page 8 and ending on page 9.  And the relevant

10  language is:  "Upon the Court's acceptance of the guilty plea,

11  the United States will not bring criminal charges against any

12  current or former director, officer, or employee of the

13  defendant for any act or offense committed before the date of

14  this Plea Agreement and while that person was acting as a

15  director, officer, or employee of the defendant that was

16  undertaken in furtherance of an antitrust conspiracy involving

17  the manufacture and sale of ready mixed concrete," and here's

18  the relevant language, "in the Indianapolis, Indiana,

19  metropolitan area."

20       So we think that if the conspiracy was broader in this

21  case, then perhaps nationwide transactional immunity is

22  warranted, but that should be disclosed to the Court.  If it

23  was narrower, then the immunity should be limited to the

24  location where the conspiracy occurred, especially in view of

25  the circumstantial evidence of a nationwide conspiracy that

1  I've already described, and especially in view of the

2  whistleblower Mr. McNulty's statement that the conspiracy goes

3  much further than the Eastern District of Michigan.

4       And, Your Honor, we also have, as I mentioned, concerns

5  about the defendant's ability to pay restitution and/or the

6  fines imposed.  We discussed with the government and with Mr.

7  Majoras changing the fine provisions to shift the money from a

8  fine to some sort of a restitution fund that would be available

9  not only for the victims whom I represent, but for all of the

10  victims nationwide who might appropriately make claims in

11  connection with the conspiracy.  Again, we believe the criminal

12  case is an appropriate forum for this to be considered because

13  it relegates restitution to the civil cases.

14       Now, Your Honor, one of the things that we may well wind up

15  requesting is that the Court impose a specific order

16  restraining the defendant's ability to transfer assets.  I'll

17  explain in a moment that there's some evidence that that may

18  have been done.  We don't know.  I know only the bits and

19  pieces that we were able to get from their financial

20  statements.  But I have a number of cases that show that under

21  the All Writs Act the Court has the authority, after the plea

22  but before the sentencing, to impose orders as appropriate to

23  preserve assets for the payment of restitution.

24       The reason for our -- reasons for our concerns arise from

25  Arctic Glacier's third quarter financials, which suggest that

1   the company is insolvent, if the definition of insolvency, an

2   inability to pay bills when due, is the definition that's used.

3   Regardless of the definition that's used, there's certainly

4   reason for a concern that they are very close to it.   Their

5   financial statements disclose a working capital deficiency of

6   $44 million as of the end of the third quarter, or September

7   30th, 2009.   This results from $60 million in notes coming due

8   in January.   So they were shifted from long-term liabilities to

9   current liabilities, creating this working capital deficiency.

10      In the financials the company acknowledges that it cannot

11   predict whether it will be successful in refinancing those

12   debts.   So there is grave reason for -- or reason for grave

13   concern that there simply would be no money left by the time

14   all of this is over, particularly if they pay the fine that's

15   provided for in the Plea Agreement, which Arctic Glacier

16   assigns a present value to in its financials as somewhere in

17   the neighborhood of $6 million.

18      Additionally, as I mentioned, there is reason for

19   concern -- and I'm not accusing anybody of anything, because I

20   simply have seen what's in the financial statements, and it

21   caused the hair to stand up on the back of my neck and for me

22   to wonder what's happening.   But the financial statements show

23   that in September 2009 $28.1 million in cash was used to buy

24   down debt.   Now, we can't tell from the financials if these

25   obligations were due or if they were prepaid, and we can't tell

1    from whom these obligations were purchased, whether they were

2    outsiders who simply held debentures or some other debt

3    instrument or whether they were insiders who had loaned money

4    to the company.  So we can't tell any of those things.  We see

5    only that $28.1 million in cash was used to buy down debt.  So

6    we are concerned about transfers of funds out of the company.

7         Then in addition -- and again, I'm not accusing anybody of

8    anything.  I don't know what it was for.  Simply my observation

9    that in the Plea Agreement it shows that in the third -- or I'm

10   sorry.  In the financial statements it shows that in the third

11   quarter alone Arctic Glacier incurred legal fees and expenses

12   totaling $900,000 in that quarter alone, to say nothing of the

13   $10.2 million that I think they incurred in fees and expenses

14   the year before.  Again, I'm not saying those are

15   inappropriate; I'm merely observing that they occurred and are

16   depleting the company's assets.

17        In light of all of that, Your Honor, the Plea Agreement's

18   fine provisions conflict with the Sentencing Guidelines and

19   with Title 18 because they may interfere with the ability to

20   make restitution.  Section 8C3.3(a) of the Guidelines says that

21   the fine shall be reduced below that otherwise would be

22   required to the extent that imposition of such fine would

23   impair the defendant's ability to make restitution.  So the

24   Guidelines provide that there should be no fine imposed that

25   will interfere with the ability to make restitution.

1    Additionally, there is 18 U.S.C. Section 3572(b), which

2    also specifically provides that there should be no fine that

3    interferes with the defendant's ability to make restitution,

4    which, again, is what we think threatens to happen in this

5    case.

6    So in conclusion, Your Honor, we believe that the Plea

7    Agreement serves the interests of the parties but not the

8    interests of the victims.  We ask that the Court defer

9    consideration of the Plea Agreement until -- or defer

10   acceptance of the Plea Agreement until after all of the facts

11   are known.  And finally, we just simply alert the Court and the

12   probation office that, in light of all these objections, it is,

13   I think, likely that unless we are able to persuade the parties

14   to revise it, the victims will object and ask that the Plea

15   Agreement be rejected.

16           THE COURT:  Are you suggesting I can't accept a guilty

17   plea today?

18           MR. AXELROD:  No, Your Honor, I'm not.

19           THE COURT:  I didn't think you were.

20           MR. AXELROD:  I'm not.

21           THE COURT:  That's what I thought you were saying.

22           MR. AXELROD:  No.  I apologize if I conveyed that,

23   Your Honor.  I'm simply asking --

24           THE COURT:  Because, to me, what you're doing, you're

25   killing the goose that may lay your golden egg for you.  But

1  that's between -- that's for future understanding.

2          MR. AXELROD:  You know, and I do understand, Your

3  Honor.  Again, I'm simply asking the Court defer final

4  acceptance of the Plea Agreement.

5          THE COURT:  I wish you'd have just asked me that in

6  the beginning.

7          MR. AXELROD:  I apologize, Your Honor.

8          THE COURT:  No, you don't.  I appreciate your saying

9  that, but you meant to say what you said or you wouldn't have

10  taken the time to do it.

11          MR. AXELROD:  Well, I did mean to make my remarks,

12  Your Honor.

13          THE COURT:  Well, I understand that.  But really the

14  only thing that you want me to do is postpone the acceptance of

15  the Plea Agreement.  You don't want me to postpone these

16  proceedings or acceptance of the guilty plea.

17          MR. AXELROD:  That's absolutely correct, Your Honor.

18          THE COURT:  I thought maybe that's what it was.  And

19  you're getting me all confused, because I think you want me to

20  refuse the guilty plea, send them on their way to the grand

21  jury.

22          MR. AXELROD:  Well, Your Honor, again, I meant my

23  remarks, but I guess I meant them to be clearer, because I did

24  not intend to convey that to the Court.

25          THE COURT:  Well, that's what you've conveyed.

1          MR. AXELROD:  Well, again, I do apologize for that.  I

2   wanted to alert all of the parties, because I believe that the

3   probation office is going to go to work on this, and wanted

4   everyone, including the parties, to approach this with the

5   understanding that the victims have these objections.

6          THE COURT:  Well, I understand the victims have the

7   concern.

8          MR. AXELROD:  Yes, sir.

9          THE COURT:  And I understand that they will look out

10  for their own best interests in this matter.

11         MR. AXELROD:  Yes, sir.

12         THE COURT:  And I understand you have rights under the

13  law to participate in this manner.  I understand that.

14         MR. AXELROD:  And we appreciate your indulgence in

15  allowing us to do so.

16         THE COURT:  But I also trust that good judgment and

17  reason will permit you to have an overall view of the situation

18  so that you really can protect the interests of your clients.

19         MR. AXELROD:  I will do my best, Your Honor, including

20  taking the Court's remarks to heart.

21         THE COURT:  All right.  Thank you.

22         MR. AXELROD:  Thank you, Your Honor.

23         THE COURT:  Mr. Culum, anything you want to say at

24  this time other than that you object?

25         MR. CULUM:  Well, Your Honor, first off, you know, we

1  are -- I think that this -- Mr. Axelrod certainly addressed

2  several issues that they have raised, several of which they

3  raised to us when we met.

4      It addressed -- two issues.  One, I think it would help all

5  parties involved to establish a procedure in which they address

6  their concerns to the probation office well in advance so that

7  we can all hear what they have to say.

8      Secondarily, if they're going to file any written

9  objections, that there is a procedure in place, possibly 20

10  days in advance of the sentencing, so that parties could reply

11  or respond to the request.  I think that would be worthwhile.

12      The second issue, I just want to make sure, and I know the

13  Court knows this, but we -- in the two weeks since we last were

14  here in Cincinnati, we likewise reached out to the direct

15  purchasers, the people who are prosecuting their case in the

16  Eastern District of Michigan, as well as indirect purchasers.

17  We offered to confer with them.  Suffice it to say, they are

18  not here, and you can infer whatever you'd like from the fact

19  that the direct purchasers are not here.

20          THE COURT:  Well, I thought that you represented, Mr.

21  Axelrod, a direct purchaser and some indirect purchasers.  The

22  direct purchaser was not in the Eastern District of Michigan.

23          MR. AXELROD:  That's correct, Your Honor.

24          THE COURT:  But the others were -- some of those

25  indirect purchasers were in?

1          MR. AXELROD:   That's correct, Your Honor.

2          THE COURT:   Now, is that a different class action?

3          MR. CULUM:   Your Honor, the lead counsel for the

4    direct purchasers, who represent -- lead counsel not only in

5    the charged conspiracy but throughout the country, is a person

6    by the name of Joe Kohn and his law firm, and I reached out to

7    them and just alerted them.   They had read the Plea Agreement;

8    they were aware of the Plea Agreement; they were aware of the

9    proceedings today; they are not here.   So it's possible that

10   The Baron Group may be an opt-out of the direct purchaser class

11   action, but the lead counsel was aware of the Plea Agreement,

12   aware of the proceedings here, and chose not to be here.

13       The second issue, we continually want to reaffirm we

14   appreciate the Court's listening to the victims, we still think

15   there are some standing issues in terms of the charged

16   conspiracy and the indirect purchasers and direct and proximate

17   harm.

18       So those are the two things as to what he just said, and I

19   may have something else today later, but thank you.

20          THE COURT:   Mr. Majoras, do you wish me to proceed in

21   the matter, or what is your position at this time, for the

22   record?

23          MR. MAJORAS:   Your Honor, our position is that we

24   should proceed.   We certainly disagree with a number of things

25   that Mr. Axelrod said.   We also are of the view that a number

1    of the arguments he's making are appropriate for the civil

2    action in which they represent these same parties.  And just

3    for the record, we would renew the arguments we made the last

4    time we met that were on the record with respect to standing

5    and with respect to the appropriate place for restitution in

6    this case.

7              THE COURT:  Mr. Axelrod, you were the proponent here.

8    Any further comment?

9              MR. AXELROD:  Your Honor, I think I know when it's

10   time to sit down and be quiet.

11             THE COURT:  You are very wise.

12       Mr. Adams, do you have anything you wish to add at this

13   time when I ask this question:  Is it fair for me to believe

14   that this decision of yours and the corporation's to plead

15   guilty is your voluntary act and deed?

16             MR. ADAMS:  Yes, it is, Your Honor.

17             THE COURT:  And is it fair for me to believe that

18   you're pleading guilty here today on behalf of the corporation

19   with a full understanding of the nature of the charge against

20   you and the consequences of that plea of guilty?

21             MR. ADAMS:  Yes, that is all understood.

22             THE COURT:  The factual basis was set forth in the

23   Plea Agreement.  Do you wish to elaborate on the factual basis

24   at this time?

25             MR. ADAMS:  No.  We'll certainly stand by what was set

1   out in the Plea Agreement.

2          THE COURT:  And do you have any additions or

3   corrections or explanations you wish to make to that factual

4   statement?

5          MR. ADAMS:  None, Your Honor.

6          THE COURT:  And, Mr. Majoras, does your investigation

7   into the facts of this case establish the truth of the factual

8   rendition that I believe is set forth --

9          MR. MAJORAS:  Paragraph 4, Your Honor.

10          THE COURT:  What page is that on?  I'll refer to

11   the --

12          MR. CULUM:  Page 4, Your Honor.

13          MR. MAJORAS:  Page 4.

14          THE COURT:  I'm sorry.  I didn't --

15          MR. MAJORAS:  Page 4, Your Honor.

16          THE COURT:  Page 4.

17     -- at page 4, and it continues on until page 6?

18          MR. MAJORAS:  Yes, Your Honor, that is consistent.

19          THE COURT:  And I incorporate that as to the factual

20   basis for the plea and the charge.  And you say that your

21   investigation establishes the truth of that factual basis?

22          MR. MAJORAS:  Yes, sir.

23          THE COURT:  Mr. Adams, is the Statement of Facts true?

24          MR. ADAMS:  It is true, Your Honor.

25          THE COURT:  Is it fair, then, for me to believe that

```
 1   you are pleading guilty here today on behalf of the corporation
 2   because the corporation is indeed guilty of violating Title 15,
 3   United States Code, Section 1, conspiracy to restrain trade?
 4           MR. ADAMS:  Yes, that's correct, Your Honor.
 5           THE COURT:  Do you have any questions at this time
 6   that we can discuss, that you want to discuss?
 7           MR. ADAMS:  I don't, Your Honor.
 8           THE COURT:  Anything further the Court should do
 9   before I make my findings in the matter?
10           MR. CULUM:  No, Your Honor.
11           MR. MAJORAS:  No, Your Honor.
12           THE COURT:  Any questions?  I've asked that several
13   times.  I've only asked it one or two times with you because I
14   respect your professionalism, but many times I ask that many
15   times during the course of one of these proceedings.
16           MR. ADAMS:  I have no questions, Your Honor.
17           THE COURT:  Do you have a sentencing date available?
18           COURTROOM DEPUTY:  Thursday, February the 11th, at
19   10:00 o'clock.
20           THE COURT:  The Court finds that the -- the Court has
21   observed the appearance of Mr. Adams in giving his answers to
22   the questions asked on behalf of the corporation, and based on
23   such observations, the answers given, and Mr. Adams'
24   representations, the Court finds that the defendant, the
25   corporation -- or that he is in full possession of his
```

faculties.  He is not suffering from any apparent physical or
mental illness.  He is not under the influence of narcotics or
alcohol.  He understands the proceedings in which he is
engaged.  He understands the nature and meaning of the charge
and the consequences of the plea of guilty, and he is aware of
all plea negotiations undertaken on behalf of the corporation.
The Court is satisfied with Mr. Adams' responses as to how he
pled guilty on behalf of the corporation, and the Court finds
that the corporation is guilty of the offense as stated of the
violation of Title 15 of the United States Code, Section 1.

The matter will be referred to the department of probation
for a presentence investigation and report.  The matter will be
continued until --

COURTROOM DEPUTY:  Thursday, February the 11th, at
10:00 o'clock.

THE COURT:  -- February the 11th at 10:00 o'clock,
which is a Thursday, at which time the Court will receive any
objections to any presentence report that is prepared.

The probation officer will provide the parties and Mr.
Axelrod the timeline for the investigation today, and the
parties are requested and advised to abide by that timeline so
that we can meet the obligation of the sentencing information
and the obligations presented to us under Title 18, Section
3553, so that at the time of sentencing an appropriate sentence
can be provided that is sufficient but not greater than

 1  necessary to satisfy the sentencing requirement of Congress in

 2  that section.

 3      Mr. Adams, I won't require you to post a bond.

 4          MR. ADAMS:  Thank you, Your Honor.

 5          THE COURT:  I never did that before on a corporation,

 6  but I thought about it and, no, I won't do that.

 7      Mr. Culum, is there anything further the Court should do at

 8  this time to -- I continue the approval of the Plea Agreement

 9  until such time as the sentencing date, at which time I'll have

10  the complete information so that I can evaluate the matters

11  that have been indicated today, and I will make the judgment at

12  that time as to whether to accept the Plea Agreement or not.  I

13  do not represent to anyone that I have in any way, and I do not

14  intend to in any way indicate any decision that I might make as

15  to whether I would accept it or not.  Understand that I will

16  inform the parties before that date so that, if my thought is

17  that I will not accept it, that the plea can be withdrawn to

18  protect the defendant.

19      However, I believe that a hearing will be necessary on the

20  objections to the presentence report before a fair

21  determination can be made and before the defendant is denied

22  the benefit of its bargain, or the United States the benefit of

23  its bargain.

24      Mr. Culum?

25          MR. CULUM:  Your Honor, to ensure that we receive the

1    benefit of our bargain, is there a way that we could establish

2    a process, maybe that any written objections or written

3    pleadings relating to the sentencing be filed in advance so

4    that all parties can respond to --

5              THE COURT:  Have you read the local rule?

6              MR. CULUM:  Your Honor, I have, but I have not before

7    today.  I mean, I have, but I didn't focus on it before this

8    meeting.  I will review the local rules.

9              THE COURT:  As I recall, the probation officer will

10   present you a timeline, and the objections to the presentence

11   report are made at least 30 days.

12       The probation officer is here.  Would you explain the

13   timeline while I'm here so that we all understand it.

14             PROBATION OFFICER JENSEN:  Yes, Your Honor.

15       Laura Jensen for the probation office.  35 days from today

16   the parties, the government and counsel for the corporation,

17   will receive an initial version of the presentence report for

18   review.  47 days from today they must have their objections to

19   the presentence report to the probation office.

20       Normally the victim is not provided a copy of the

21   presentence report.

22       And then 73 days from this date it will be due to the Court

23   in a final version with any addendum, discussing the objections

24   to the presentence report and the positions of all parties

25   included.

1          THE COURT:  And what about giving the presentence

2    report to the victim, to Mr. Axelrod?

3          MR. CULUM:  Your Honor, I would hope that that

4    presentence report is in a redacted version, because certain

5    portions of it should not be disclosed to him.

6          THE COURT:  Absolutely.

7          MR. CULUM:  Okay.  And in that vein, I envision that

8    prior to sentencing that there will be written, a written

9    pleading from the victims.  And to ensure that we don't -- are

10   in a situation where we need to recess because we will have

11   received the pleading on the day of the sentencing or shortly

12   before, I know that I would appreciate the opportunity to

13   consider the arguments made so that, if there is an appropriate

14   response, that I'm able to do so.  And that's what --

15       Apart from the PSR, I think that there will be a written

16   plea much like that there was before the initiation of this

17   arraignment, and I would ask the Court to suggest to the

18   victims or to Arctic or to the government that, if there are

19   going to be written pleadings apart from the PSR, that they

20   would be submitted to the Court in advance, well in advance, so

21   that all parties could respond.

22       Maybe I'm out of line, but I just -- I thought that would

23   be helpful.

24         THE COURT:  Mr. Axelrod, what I'm concerned about, I

25   will not see the report until after it has been completely gone

1  through the process and is in a final form with your objections

2  to the report, I presume.  But I don't know exactly how to

3  approach this in view of the fact that the victims haven't had

4  a chance to present their petition to the probation department

5  at this time.  When will you present your petition to the

6  probation department?

7          MR. AXELROD:  Your Honor, you kind of have me on the

8  spot about that.  But if it's all right with Mr. Culum, and

9  with the Court's approval, I think if he and I talk after this

10 proceeding, it won't be difficult at all to come up with a

11 schedule that will meet his needs to be able to respond to

12 whatever it is we submit.  I'm happy to do that.

13         THE COURT:  But you understand that you're going to

14 have -- you're notified that this situation is going to be

15 tried or at least determined on February the 11th and that it's

16 necessary that the objections and your petition for -- or

17 whatever your request, I guess would be a way to put it, for

18 restitution would be available to them so that the probation

19 department can review it and add it to the presentence report?

20         MR. AXELROD:  I understand, Your Honor.  We're bound

21 by the same timeline as everyone else, and I was suggesting

22 that I may be able to work out something extra with Mr. Culum.

23         THE COURT:  Well, I appreciate that.  And if there are

24 other complications, why, we'll set a hearing.

25         MR. AXELROD:  Thank you, Your Honor.

1        THE COURT:  Mr. Majoras?

2        MR. MAJORAS:  Thank you, Your Honor.  I made these

3  comments on the record at our last opportunity, and we'll just

4  state them briefly.

5        The company is very interested, because of various

6  financial constraints that it is facing, in trying to establish

7  a certainty with respect to the sentencing here.  We understand

8  the Court's schedule.  We will certainly abide by that.  We

9  will provide the information on a timely basis.

10       Following up with what Mr. Culum said, all I would ask, so

11  that I don't have to come to the Court seeking any additional

12  time, is that if the plaintiffs -- I'm sorry, if the victims'

13  group were to decide to file some court pleading aside from the

14  objection or anything else in the presentencing stage, that

15  that be done at least 20 days in advance of the hearing so that

16  we have adequate time to respond if we need to.

17       MR. AXELROD:  And, Your Honor, I'm happy to do that.

18       THE COURT:  All right.  So that will be added to the

19  situation.

20       Now, how will the victim be notified of the -- well, the 20

21  days, then, is figured from February the 11th.  Is that what

22  you're talking?

23       MR. MAJORAS:  That would be my suggestion, Your Honor.

24       MR. AXELROD:  Yes, sir.

25       THE COURT:  All right.  And that would be what date,

1    so that I don't have to keep figuring that?

2              COURTROOM DEPUTY:  January 22nd.

3              THE COURT:  So January 22nd any comments from the

4    victims represented here today will be given to the parties.

5              MR. AXELROD:  Yes, sir.

6              MR. CULUM:  Thank you, Your Honor.

7              MR. MAJORAS:  Thank you, Your Honor.

8              THE COURT:  Now, we have the problem of notice that's

9    pending before the Court, the request of the United States of

10   the notice.  And I think we're here; let's discuss that at this

11   particular time.

12             MR. CULUM:  Your Honor, there are a significant number

13   of direct purchasers who are located in the Eastern District of

14   Michigan who are affected by the charged conspiracy, many of

15   whom are represented by Mr. Kohn.  Mr. Kohn has received the

16   Information, the Plea Agreement, et cetera.  Certainly he

17   has -- he has an independent reason to try to reach out to

18   those people, but he may not be successful.

19        We felt that the use of an ad, the notice through our

20   filing, will provide these individuals, these businesses, the

21   opportunity to know of and be aware of the court proceedings in

22   this case.  It certainly has worked out well in the Home City

23   situation.  We certainly crafted it after the Home City notice.

24        We have been criticized that it took a little bit of time

25   to get it up and running, and that is our fault.  We tried to

do it as quickly as we could, but unfortunately, we didn't

do -- with things going on, we couldn't do anything until it

was unsealed.  But we would believe -- we believe that that

notice is sufficient.  We believe it was sufficient in the Home

City situation.

We have been in contact with the direct purchasers.  The

indirect purchasers, Mr. Wild -- who is not here, but Mr.

Axelrod is co-counsel -- he is aware of the notice, and I

believe that, as best as we can do with the number and multiple

numbers of victims we have here, we're doing the best job we

can of notifying them of court proceedings, appearances,

changes in the case status.

So we would ask the Court to sign the order and allow us to

provide notice via the Detroit Free Press.

THE COURT:  Any comment on that, Mr. Majoras?

MR. MAJORAS:  Essentially I'm not sure this is my

fight, Your Honor, but I would agree that there has been a

great deal of publicity both from the standpoint of the

announcements made by the DOJ, the announcements made by my

client as a part of their corporate disclosures.  The fact that

there are a number of counsel, only two of whom were mentioned

today, in the civil actions who have an interest in looking

after their what they hope will be classes in those cases, and

so we would not object to what Mr. Culum has suggested.

THE COURT:  Have these lawsuits been filed?  Have

1    you -- are the lawyers identified?

2          MR. MAJORAS:  Yes, sir.

3          THE COURT:  And are they all filed in the Eastern

4    District of Michigan?

5          MR. MAJORAS:  There is one that is filed in Wisconsin,

6    Your Honor, but the -- in fact, the MDL court in the Eastern

7    District of Michigan has identified at least lead counsel prior

8    to class certification, including Mr. Wild and Mr. Kohn, who

9    Mr. Culum mentioned.

10         THE COURT:  Is that database available to the United

11   States or the defendant to use as a tool to give notice to

12   those particular individuals, the lawsuits?

13         MR. CULUM:  Your Honor, the Web site that we're using

14   is our own, and it deals with the charged conspiracy.  My

15   understanding is that the allegations in the Eastern District

16   of Michigan that are the subject of the Complaint are broader

17   than the charged conspiracy here.  So to the extent that there

18   is an alleged victim of the Complaint who lives in Kansas, for

19   example, that person probably could -- I mean, our notice is

20   not that sufficient for him, but that person is not a victim

21   under our -- under the statute we're here.

22      So the defendant cannot use the Web site, but we will

23   continue to provide updated information as to the court

24   proceedings in this case, and everyone -- anyone in the country

25   can look at it.

1     In terms of providing information, we're the only people

2   putting it up, but you can go Google it and find it yourself,

3   and everyone has access to it.  It's not a very --

4          THE COURT:  What about Facebook?

5          MR. CULUM:  I will raise that with Ms. Varney.

6          MR. MAJORAS:  Your Honor, if I could, so I make sure I

7   wasn't misunderstood, there is no Web site as such or a

8   notification process in the Eastern District of Michigan.

9   There have been no classes certified.  As Mr. Culum said and as

10  we raised in our discussion about the representation of the

11  victims, there is an issue where the class, purported classes

12  far exceed the area of conduct in terms of the Information

13  charged.

14     So that there is not a process other than simply the PACER

15  filings in that case, which I don't think would be an

16  appropriate venue.

17         THE COURT:  Mr. --

18         MR. AXELROD:  And, Your Honor, frankly, I am not -- I

19  don't know the answer to this, but I simply point out that as I

20  said in my remarks, under 1B1.3, if there is a broader

21  conspiracy -- and I don't know what has been disclosed to the

22  government.  But if indeed there is a broader conspiracy than

23  the Eastern District of Michigan, because it's part of the same

24  course of conduct, it would be deemed relevant conduct under

25  the Guidelines.  I don't know whether that creates a notice

1    obligation beyond the Eastern District of Michigan, but I

2    simply point out that that possibility exists.

3              THE COURT:  Mr. Culum, in other words, we're following

4    this procedure from the Home City case; is that correct?

5              MR. CULUM:  Correct, Your Honor.

6              THE COURT:  And it's the same procedure as far as the

7    notice is concerned.  And, of course, I do not know whether

8    that's been effective yet because we keep postponing the Home

9    City case.

10             MR. CULUM:  Correct, Your Honor.  And it's been used

11   in other antitrust cases, and generally I believe most judges

12   have been pretty happy with the system.

13             THE COURT:  All right.  And so you're going to

14   duplicate what we've done in Home City?

15             MR. CULUM:  Absolutely.

16             THE COURT:  All right.

17       Well, in the interest of moving the case forward, I would

18   agree that you may proceed with the same order that I issued in

19   the Home City case to notify the general public and anyone

20   interested in this particular case.

21             MR. CULUM:  Thank you, Your Honor.

22             THE COURT:  Is there anything else that's -- and the

23   motion that was filed, I believe, on behalf of Mr. Axelrod's

24   client, I believe that has been granted, in part anyway, and is

25   now terminated on my docket?

1          MR. AXELROD:  I'm sorry.

2          THE COURT:  Is that right?

3          MR. AXELROD:  I didn't realize.  I thought the Court

4    was telling me something rather than asking me something.

5          THE COURT:  No.  I was trying to get a rise out of you

6    to see whether it's been -- whether I've answered your motion

7    or not.

8          MR. AXELROD:  You've got a rise out of me, Your Honor,

9    and, yes, you have.

10         THE COURT:  All right.  So then all motions are

11   straightened out at this time.  I await with bated breath the

12   next round.

13     Is there anything further at this time?  As I said, I've

14   accepted the guilty plea, and the matter will be continued till

15   February the 11th at 10:00 o'clock.

16         MR. CULUM:  Your Honor, thank you for letting us be

17   here today.  It's a beautiful courtroom.  I don't know that

18   we're worthy of it, but thank you.  It's really an honor.

19         THE COURT:  Well, I know.  I feel most humble in that

20   I'm just glad to be back in it.  You can see the environment is

21   a little different than we've been operating in in the past

22   meetings with you.  But I've tried cases in a cornfield, so

23   this is not -- I mean, the trappings are beautiful, but I can

24   try a case almost anyplace that I can hear.

25     Is there anything further, then, from the defense at this

1  time?

2          MR. MAJORAS:  Nothing further, Your Honor.  We thank

3  you for the Court's consideration.

4          THE COURT:  Mr. Axelrod, anything?

5          MR. AXELROD:  Nothing further, Your Honor.

6          THE COURT:  So be it.  The matter is continued until

7  February the 11th at 10:00 o'clock.  2010.  Unbelievable.

8  Thank you.

9          MR. MAJORAS:  Thank you, Your Honor.

10          COURTROOM DEPUTY:  All rise.  This honorable court is

11  now adjourned.

12      (Proceedings concluded at 11:50 AM.)

13                          - - -

14

15

16

17

18

19

20

21

22

23

24

25

1               C E R T I F I C A T E

2          I, Luke T. Lavin, RDR, CRR, the undersigned, certify

3    that the foregoing is a correct transcript from the record of

4    proceedings in the above-entitled matter.

5

6                              s/Luke T. Lavin
                               _____
                               Luke T. Lavin, RDR, CRR
7                              Official Court Reporter

8                                   - - -

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25